ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Shafi Nasimi Construction and Logistics Company ) ASBCA No. 59916
)
Under Contract No. W91B4N-09-C-8150 )

APPEARANCE FOR THE APPELLANT: Mr. Mohammad Shafi Nasimi
CEO

APPEARANCES FOR THE GOVERNMENT: Raymond M. Saunders, Esq.
Army Chief Trial Attorney
Erica S. Beardsley, Esq.
Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE DELMAN ON THE GOVERNMENT'S
MOTION TO DISMISS FOR LACK OF JURISDICTION

The Board, *sua sponte*, questioned whether the Board had jurisdiction over this appeal. Board Rule 7(b). In response, the government moved to dismiss the appeal for lack of jurisdiction. For reasons stated below, we grant the government's motion.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. The Department of Army, Bagram Regional Contracting Center (government) awarded this contract to Shafi Nasimi Construction and Logistics Company (appellant) on 19 July 2009 for the construction of the Warrior Office Facility at Bagram Airfield, Afghanistan (R4, tab 3).

2. The government issued a Notice to Proceed (NTP) to appellant on 9 September 2009. Appellant was to begin performance within seven calendar days of issuance of the NTP, and to complete performance within 120 days of this notice. (R4, tab 23)

3. The government issued a Stop Work Notice on 14 September 2009 as a result of design issues (R4, tabs 24, 26). The government issued a second NTP on 7 June 2010 (R4, tab 37).

4. By memorandum to appellant dated 2 December 2011, the contracting officer (CO) terminated the contract for default as a result of appellant's failure to make progress on the project, the completion date of which had been extended to 12 October 2011. The termination notice provided: "This notice also constitutes a decision that you

are in default of the contract as specified. You have the right to dispute that decision under the Disputes clause of the contract." (R4, tab 62) The termination notice did not advise appellant of its appeal rights, nor did the Disputes clause provide this information. Appellant acknowledged receipt of the termination notice on 4 December 2011 (gov't mot., ex. 2).

5. Over the next 90 days, the parties exchanged emails related to the project, but in none of these did the CO entertain or offer to entertain a reconsideration of the default termination. During this period, there was some email discussion about the extent of the work that appellant had performed and extent to which it could be paid for the same. For example, by email to appellant dated 21 December 2011, the CO advised in part as follows:

> I have been in discussion with our base engineers, and have learned that they might be able to use some of the RLB units that you delivered, after termination of the contract. If that is the case, then we would pay you for some, but certainly not all, of the cost you incurred on the contract.

(Notice of appeal (NOA), attach.) Also, by email to appellant dated 16 February 2012, the CO advised in part as follows:

> I would like to propose that we pay you some amount for the work that you have completed. I can tell that there was still a lot of work remaining to be done. Please provide me a detailed proposal.... *I also would like to keep the contract open,* if you would be interested in coming back in the future to dismantle the containers and move them to a new location for us. Please let me know if that would be of interest to you. That would then allow you to eventually get paid up to the full contract amount, if your costs to move the containers is [sic] reasonable. [Emphasis added]

(NOA, attach.) There is nothing in the record showing that the government made any such payments to appellant after the termination of the contract for any work performed.

6. The 90-day appeal period to the Board, 41 U.S.C. § 7104(a), expired on 3 March 2012. Appellant did not file an appeal from the termination notice by this date.

2

7. Thereafter, it appears that the CO for this project was replaced, and a MAJ Michael W. Washington, Construction Flight Chief, was charged with the responsibility for this contract. By email from appellant to MAJ Washington dated 30 July 2012, more than seven months after issuance of the termination notice, appellant requested an opportunity "to prove that it was not my fault" (NOA, attach.). Presumably, appellant referred to the default termination. Washington replied by email the same day, stating:

> Send me your documents. After I have my specialist
> review we will set up a meeting for final determination.
> Right now we have issues getting people on base
> regardless.

(NOA, attach.)

8. Appellant replied to MAJ Washington by email dated 3 August 2012, stating that approximately 85% of the project work was done, and that the termination was attributable in part to the government. Appellant forwarded various documents. (NOA, attach.)

9. By email to appellant dated 3 August 2012, MAJ Washington stated in part as follows (NOA, attach.):

> I have all of this documentation. Thank you. I can make
> you no promises.... Despite Mr. Rounds opening the door
> for a possible settlement[,] this contract was set up for a
> Termination for Default. We do not pay on T4D contracts.
>
> ....
>
> I promise you a full review and decision. This may take
> some time but I will see this through.

10. By email to appellant dated 5 August 2012, MAJ Washington stated in part as follows (NOA, attach.):

> I am now leaning toward some settlement with your
> company as my investigation has revealed several miscues
> by the U.S. Government.
>
> Our current steps are to replace the money that was
> de-obligated from the contract back onto the contract. We
> then need an estimate from the government (Mr. Dold's

3

team) as to the value of the buildings as they were when
you were told to stop working on the project....

After I get those issues resolved we will sit down with you
and negotiate a settlement.

(NOA, attach.) The record does not indicate that the parties ever met or reached such a settlement.

11. Over two years later, by email dated 25 November 2014, the government forwarded a release on this contract to appellant and requested that appellant sign it. It appears that appellant did not sign the release. (R4, tab 65)

12. Appellant filed an undated notice of appeal disputing the default termination, received by the Board on 7 April 2015, more than three years after the default termination notice was issued.

## DECISION

The government contends that we have no jurisdiction over this appeal because the appeal was not timely filed from the CO's termination notice/decision. As a threshold matter, we must address whether this termination notice was in fact a final decision that set into motion the 90-day appeal period to this Board.

The CO's termination notice of 2 December 2011 stated that the contractor may appeal under the Disputes clause of the contract, but it did not advise the contractor of its appeal rights. In *Mansoor International Development Services*, ASBCA No. 58423, 14-1 BCA ¶ 35,742 at 174,926 we recently explored what a contractor must prove to avoid the 90-day filing requirement under such circumstances:

> [W]hen confronted with contracting officer decisions that
> only advise the contractor that it may appeal under the
> Disputes clause, omitting additional details of its rights, the
> Board has required the contractor to prove it was actually
> prejudiced by the omission, or that the contractor
> detrimentally relied upon it, to avoid the 90-day limitation
> period. [Citations omitted]

*See also Decker & Co. v. West,* 76 F.3d 1573 (Fed. Cir. 1996).

Appellant has not asserted any actual prejudice, or detrimental reliance upon the omission of its appeal rights in the CO decision. We will not presume such prejudice or reliance by virtue of the late filing alone. *See Medina Contracting Company,* ASBCA

4

No. 53783, 02-2 BCA ¶ 31,979. Accordingly, we believe that the CO's termination notice of 2 December 2011 was a CO decision that set into motion the 90-day appeal period to this Board.

Next, we must explore whether this CO decision was reconsidered by the government, such that it was no longer a "final decision" for purposes of appeal. In *Sach Sinha and Associates, Inc.*, ASBCA No. 46916, 95-1 ¶ 27,499 at 137,041 (*SSA*), we stated as follows:

> It is well-established that, if a CO's decision is not truly "final," but being reconsidered, a "failure to appeal from the decision within the prescribed period will not defeat...[a] contractor's opportunity to be heard on the merits." *E.g., Johnson Controls, Inc.*, ASBCA No. 28340, 83-2 BCA ¶ 16,915 at 84,170.... Accordingly, to ascertain if this appeal is timely, we must determine whether the "finality" of the CO's decision was vitiated.

We further explained in *SSA* that the test for vitiation of finality "is whether the contractor presented evidence showing it reasonably or objectively could have concluded the CO's decision was being reconsidered." *Id.* at 137,042. The focus is upon the action of the government during the appeal period, i.e., whether any government action could have reasonably led a contractor to believe that the subject matter was not yet final, thereby making an appeal to the board unnecessary. Thus, in *SSA* we found a lack of finality where the CO met with the contractor after the issuance of the termination notice; discussed the default termination at the meeting; and requested the contractor to submit settlement alternatives in writing that were proposed at the meeting.

Appellant has provided no evidence of any such government conduct during the 90-day appeal period to this Board. After the CO issued the termination notice on 2 December 2011, the CO did not meet with or otherwise engage appellant on the merits of the default termination during the appeal period, nor did he promise to do so. In an email to appellant on 16 February 2012, the CO did propose to keep the contract "open" (SOF ¶ 5), but from the context of this email it is clear that the purpose of this proposal was to use the contract as a vehicle to pay appellant to move certain containers from the site and not to reconsider the default termination.

Months later, MAJ Washington issued a number of emails to appellant that reflected his willingness to consider a "settlement" with appellant, but it is unclear whether he referred to a monetary settlement for work performed, consistent with the default termination, or to a settlement in which the default would be rescinded and converted to a convenience termination (SOF ¶¶ 7-10). In any event, these emails

5

were issued over four months after expiration of the appeal period to the Board, and perforce could not have had any effect on appellant's understanding of the finality of the government's 2 December 2011 termination decision during the appeal period.

Based upon the foregoing, we conclude that the government did not reconsider the CO's notice of default termination of 2 December 2011 during the appeal period, and hence it was a final CO decision for purposes of appeal to this Board. Appellant failed to file an appeal to this Board within 90 days of its receipt of this decision (SOF ¶ 6), as required by the Contract Disputes Act, 41 U.S.C. § 7104(a). Accordingly, we are without jurisdiction over this appeal.

## CONCLUSION

For reasons stated above, we conclude that appellant's April, 2015 appeal to this Board from the government's December, 2011 termination decision was untimely. The government's motion to dismiss is granted. The appeal is dismissed for lack of jurisdiction.

Dated: 6 January 2016

JACK DELMAN
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

REBA PAGE
Administrative Judge
Acting Vice Chairman
Armed Services Board
of Contract Appeals

6

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59916, Appeal of Shafi Nasimi Construction and Logistics Company, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

7